IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

RICKY DALE BARRON                                                            PETITIONER
REG. #02550-063

V.                                    NO.  2:05CV00305 JWC

LINDA SANDERS, Warden,                                                    RESPONDENT
FCI, Forrest City, AR

## MEMORANDUM OPINION AND ORDER

Ricky Dale Barron, an inmate in the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus challenging the policy of the Bureau of Prisons (BOP) regarding when a federal prisoner is eligible for transfer to a community corrections center (CCC), commonly referred to as a halfway house (docket entry #1).  Respondent has filed a response (docket entry #4), and Petitioner replied (docket entries #5, #6, #9).  For the reasons that follow, the petition will be DENIED.[1]

Petitioner is serving a 120-month sentence of imprisonment imposed by the United States District Court, Eastern District of Oklahoma, for possessing a firearm moved in interstate commerce, in violation of 18 U.S.C. § 922(g).  He says he has requested that he be permitted to spend a minimum of six months at the end of his sentence in a CCC, which the BOP has denied based on its February 2005 policy limiting CCC placement to the last ten percent of an inmate's sentence without regard to the inmate's individual circumstances.  Petitioner argues that the BOP's interpretation of the relevant statutes is contrary to Eighth Circuit law and that application of its current policy to him violates the

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge (docket entry #7).

Ex Post Facto Clause of the United States Constitution. He asks the Court to declare the BOP's policy invalid and order the BOP to transfer him to a CCC for at least the final six months of his sentence.

In <u>Elwood v. Jeter</u>, 386 F.3d 842, 845-47 (8th Cir. 2004), the Eighth Circuit Court of Appeals invalidated a December 2002 BOP policy regarding CCC designation and held that the BOP has the discretion to transfer an inmate to a CCC at any time, but only the duty to consider a transfer to a CCC in the last six months of a sentence. In response to <u>Elwood</u> and other similar decisions, the BOP created the regulations challenged here, which became effective February 14, 2005. These regulations provide that, as a "categorical exercise of discretion," the BOP will designate inmates for CCC placement "only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. §§ 570.20, 570.21 (2005). Recently, in <u>Fults v. Sanders</u>, No. 05-3490, 2006 WL 870745 (8th Cir. Apr. 6, 2006), the Eighth Circuit Court of Appeals declared this policy invalid as conflicting with 18 U.S.C. § 3621(b), which lays out certain factors that must be considered by the BOP in making inmate placement or transfer determinations. <u>See</u> <u>id.</u> ("The Bureau may designate any available penal or correctional facility ... that the Bureau determines to be appropriate and suitable, considering –  (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any [relevant] statement by the court that imposed the sentence ... ; and (5) any pertinent policy statements issued by the Sentencing Commission[.]"). Because § 3621(b) requires that discretion be exercised on an individual basis, the Eighth Circuit found that the February 2005 policy was invalid because it "removed the opportunity for the BOP to exercise

discretion for all inmates not serving the last ten percent of their sentences." Fults, supra at *4; see also Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 244 (3d Cir. 2005) (BOP regulation is invalid because the BOP "may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations").

Here, Respondent argues that the petition should be dismissed because any CCC placement time determination as to Petitioner would not be based on the BOP's February 2005 policy at issue. In support, she submits the declaration of James D. Crook, a supervisory attorney for the BOP (attached to docket entry #4). According to Mr. Crook, Petitioner has a 120-month sentence, a projected release date of February 14, 2007 (assuming receipt of all available good conduct time), and a "pre-release preparation date" of August 14, 2006. (Crook Decl. ¶¶ 5-7 & att. 1.) Respondent says that, because Petitioner's "ten percent date" is already set at six months before his projected release date, he could not expect to receive any additional CCC placement time.

In reply (docket entry #9),[2] Petitioner says that, although the BOP documentation submitted shows a pre-release preparation date of August 14, 2006, his unit team has recently changed it to December 14, 2006. He supports this with a Program Review Report dated April 4, 2006, showing a CCC recommendation date of December 14, 2006, which would give him about sixty days in a CCC. (Ex. B to docket entry #9.)

Article III of the United States Constitution requires that a "case or controversy" exist for standing to bring an action in federal court. U.S. Const. art. III, § 2, cl. 1. For a case

---

[2] Although Petitioner calls this a "Motion for Judicial Notice," it has been construed as a reply to Respondent's arguments for dismissal.

or controversy to exist, a plaintiff must suffer an "injury in fact" which is "fairly traceable" to the challenged action of the defendant, and it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A sufficient injury exists only when there is an invasion of a legally-protected interest that is "concrete and particularized" and "actual or imminent." Id. at 560.

Petitioner has not demonstrated that the BOP's February 2005 policy will ever be applied to him or that it could have any adverse effect on him. As stated earlier, the policy limits CCC consideration to "the last ten percent of the prison sentence being served, not to exceed six months." For a prisoner to have standing to challenge the policy, he must be affected by its ten percent limitation. Because ten percent of Petitioner's 120-month sentence is twelve months, i.e., longer than six months, the policy's limitation does not affect him. He thus has not shown that he has suffered, or will suffer, an injury which is fairly traceable to the challenged policy and which could be redressed by a grant of federal habeas relief. Invalidating the February 2005 policy would afford him no relief. See Turtle v. Francis, No. Civ.A. H-05-3087, 2005 WL 3504410, at *3 n.1 (S.D. Tex. Dec. 21, 2005) ("Under the ten percent limitation [pursuant to the February 2005 policy], an inmate must have received a prison sentence of five years or longer to be eligible for the statute's maximum six-month period of community confinement. ... Thus, the ten percent limitation affects only those prisoners who are serving a sentence of five years or less."); Kadri v. Sanders, No. 2:05cv00140-JMM (E.D. Ark. Sept. 15, 2005) (inmate with 180-month sentence had no standing to challenge February 2005 rule); Loeffler v. Menifee, 326 F. Supp. 2d 454, 462 (S.D.N.Y. 2004) ("Under the 10 percent limitation [pursuant to the

December 2002 policy], an inmate must face a sentence of five years or longer to be eligible for [§ 3624(c)'s] maximum six-month period of community confinement."); Varona v. Menifee, No. 04 Civ. 1790, 2004 WL 1161168, at *2 (S.D.N.Y. May 24, 2004) (inmate with 108-month sentence lacked standing to challenge BOP's December 2002 policy); Lewis v. Menifee, No. 04 Civ. 5763, 2004 WL 1857301, at *1 (S.D.N.Y. Aug. 19, 2004) (recommending dismissal for lack of standing where inmate had 180-month sentence); see also Sanders v. Menifee, No. 04 Civ. 1483, 2004 WL 1562734, at *4 (S.D.N.Y. July 13, 2004) (federal prisoner had no standing to pursue § 2241 challenge to BOP's December 2002 policy where "[t]he change wrought by that policy does not affect [the prisoner]").

Although the February 2005 policy caps CCC time at six months, this was also the limitation under the December 2002 rule and was the BOP practice even before then.  See Elwood, 386 F.3d at 844 (history of BOP's CCC placement policies).  The limitation is based on 18 U.S.C. § 3624(c), which provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, **not to exceed six months**, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

Thus, while it is clear that the BOP *may* consider transferring a prisoner to a CCC before the six-month mark, it has no obligation to consider such a transfer until that time.  Elwood, 386 F.3d at 845-47.  Without an obligation on the part of the BOP, Petitioner has no corresponding right to consideration for a longer period.

Petitioner has not shown that he has been, or ever will be, affected by the BOP's February 2005 policy change limiting CCC placement to the last ten percent of a sentence. Under the BOP's February 2005 policy (invalidated by Fults), December 2002 policy

(invalidated by Elwood), or the practice previously followed, six months is the maximum amount of time for which the BOP would be required to consider CCC placement as to this Petitioner.

In his latest pleading, Petitioner appears to be asking the Court to make the BOP transfer him to a CCC on August 14, 2006, the date designated as his pre-release preparation date in the BOP's original documentation. This would give him six months in a CCC. Nothing in the applicable statutes, Elwood or Fults guarantees six months of CCC placement to any prisoner. See Woodall, 432 F.3d at 251 ("[T]hat the BOP may assign a prisoner to a CCC does not mean that it must."); Elwood, 386 F.3d at 847 ("We emphasize ... that 18 U.S.C. § 3624(c) does not require placement in a CCC."). Under Elwood, the BOP is simply required to formulate a plan of pre-release conditions, which *may* include CCC placement, and to place an inmate in pre-release conditions, which *may* include a CCC, for "a reasonable part of the last ten percent of [his] term;" however, neither of these obligations extends beyond the last six months of the prisoner's sentence. Id. Fults further defines the BOP's duty during that six-month period, requiring the BOP to consider CCC placement in good faith utilizing the statutory factors, without categorically limiting the possibility of CCC placement to the last ten percent of an inmate's sentence. Nothing in the decisions mandates that the BOP designate any inmate for CCC placement at any time, much less for the full six-month period or longer.

Petitioner also contends that application of the February 2005 policy change to him violates the Ex Post Facto Clause. See U.S. Const., art. I, § 9, cl. 3 ("No ... ex post facto Law shall be passed."). This argument is without merit, as no new policy has been applied to Petitioner, much less anything altering the definition of his criminal conduct or increasing

the penalty of imprisonment originally imposed on him.  See California Dept. of Corrections v. Morales, 514 U.S. 499, 504, 510 n.6 (1995) (Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts"; it does not "require that [a] sentence be carried out under the identical legal regime that previously prevailed"); see also Schild v. Federal Bureau of Prisons, No. 03-3057-SAC, 2006 WL 707790, at *2 (D. Kan. Mar. 20, 2006); Moss v. Apker, 376 F. Supp. 2d 416, 425 (S.D.N.Y. 2005).

Accordingly, this 28 U.S.C. § 2241 petition for writ of habeas corpus is DENIED in its entirety.  All pending motions are denied as moot.

IT IS SO ORDERED this 21st day of April, 2006.

                                                UNITED STATES MAGISTRATE JUDGE